IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

ANGIE SUE CLARK,

                     Plaintiff,                     OPINION AND ORDER

     v.

                                                   08-cv-763-bbc

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                     Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

This is an action for judicial review of an adverse decision of the Commissioner of Social Security brought pursuant to 42 U.S.C. § 405(g).  Plaintiff Angie Sue Clark seeks reversal of the commissioner's decision that because she is not disabled, she is not eligible for Disability Insurance Benefits under Title II of the Social Security Act, codified at 42 U.S.C. §§ 416(i) and 423(d).  Because I find that substantial evidence supports the administrative law judge's conclusion that plaintiff can perform simple, routine and repetitive light work and that the administrative law judge adequately explained why he was rejecting plaintiff's evidence to the contrary, I am affirming the commissioner's decision. The post-decision opinion of Dr. Harnish, plaintiff's family physician, was not well-supported by clinical findings or consistent with other substantial evidence in the record, and

1

therefore does not give rise to a reasonable probability of a different outcome on remand. Further, although the administrative law judge made facially inconsistent findings with respect to plaintiff's depression, I am satisfied that the error did not affect the outcome of plaintiff's application.

The following facts are drawn from the administrative record (AR):

FACTS

A.  Background and Procedural History

Plaintiff was born on March 2, 1960.  She completed the eleventh grade and has past relevant work experience as a grocery and convenience store clerk.  AR 25, 278.

Plaintiff filed an application for disability insurance benefits on November 10, 2005, alleging that she had been unable to work since July 13, 2005 because of scoliosis and arthritis of the back.  AR 20, 67.  In a physical activities questionnaire submitted with her application, plaintiff indicated that she cleaned the house but that it took longer because of the pain in her back.  She also indicated she cooked for herself and her husband, played on the computer and walked her dogs.  AR 86-87.

After the local disability agency denied plaintiff's application initially and upon reconsideration, plaintiff requested a hearing, which was held on May 21, 2008 before Administrative Law Judge Arthur J. Schneider.   The administrative law judge heard

2

testimony from plaintiff, AR 278-90, and a neutral vocational expert, AR 291-99.  On May 30, 2008, the administrative law judge issued his decision, finding plaintiff not disabled.  AR 20-26.  This decision became the final decision of the commissioner on October 28, 2008, when the Appeals Council denied plaintiff's request for review.  AR 5-8.

## B.  Medical Evidence

On July 13, 2005, plaintiff saw Dr. Peter Harnish, her family physician, for a follow-up examination of a big toe fracture she had suffered on July 2, 2005.  AR 147.  On October 18, 2005, plaintiff returned to see Harnish, complaining of low back pain.  AR 152.  Plaintiff said she had had the pain for more than a year, but it had been getting worse over the past several weeks.   X-rays of plaintiff's lumbosacral spine showed moderate scoliosis with moderate to severe degenerative disc disease.  AR 151.  Harnish diagnosed back pain caused by scoliosis and some degenerative changes.  He recommended that plaintiff participate in physical therapy and pain management sessions.  AR 153.

On November 1, 2005, plaintiff saw Dr. Cynthia Bender, a specialist in physical medicine and rehabilitation, for pain management.  Plaintiff reported that she had low back pain and was having trouble sleeping.  AR 149.  Bender discussed pain control with plaintiff and gave her a prescription for oxycodone.  AR 150.

3

On November 9, 2005, plaintiff returned to see Dr. Bender and reported that the oxycodone did not relieve her pain. Bender started plaintiff on methadone and referred her to physical therapy. AR 146.

Plaintiff began physical therapy on November 11, 2005. The therapist noted that plaintiff had a slightly antalgic gait pattern with decreased trunk rotation. Plaintiff's range of motion of her lumbar spine was significantly decreased and she had some weakness in her lower extremities. The therapist recommended a home exercise program. AR 144-145.

On November 17, 2005, plaintiff was seen in the orthopedics clinic by physician assistant David Wilson. On examination, plaintiff had negative straight leg raising, stable gait, the ability to walk on tiptoes and heels and no swelling in her lower extremities. She had full motor strength and flexion. Wilson advised plaintiff to get a magnetic resonance imaging scan, AR 142-43, which she did. The November 18, 2005 scan of plaintiff's back showed scoliosis, moderate to severe degenerative disc disease, moderate left foraminal stenosis and no significant central stenosis. AR 140-41. After reviewing the scan, Wilson advised plaintiff that surgical intervention was not warranted. AR 272.

Plaintiff returned to see Bender on November 29, 2005. Plaintiff was not satisfied with the relief she was getting from methadone. Bender prescribed morphine (MS-Contin) for plaintiff. Bender noted that plaintiff was applying for social security disability and generally seemed unhappy. AR 139.

4

On November 30, 2005, plaintiff returned to physical therapy and reported that she had been minimally compliant with her home exercise program and her back was stiff because she had done a lot of traveling.  The therapist advised plaintiff that she would benefit from more aggressive performance of the home exercises.  AR 138.

On December 13, 2005, plaintiff told Bender that she was not getting any relief from the MS-Contin.  However, her companion noted that plaintiff had more problems when she did not take the medicine,.  Bender increased plaintiff's MS-Contin dosage.  AR 137.

On January 6, 2006, plaintiff saw Dr. Harnish for leg swelling.  He noted that she had significant depressive symptoms because of her chronic pain.  Also, he noted that plaintiff did not get along with multiple family members, including her children, and had recently asked her husband for a divorce.  Although Harnish recommended counseling, plaintiff declined, stating that she was seeing too many doctors as it was.  AR 129-30, 266-67. Harnish started plaintiff on Celexa.

On March 2, 2006, plaintiff saw Dr. Harnish, reporting that she had been much more active cleaning and painting her house.  She reported that she had not smoked for two months and had been alcohol free for two years.  Harnish described plaintiff as alert, oriented and in no distress.  He increased her dosage of Celexa and encouraged her to maintain her smoking cessation.  AR 126.

On April 11, 2006, plaintiff saw Dr. Bender and reported she was doing "okay" on the MS-Contin.  Bender increased her dosage.  Plaintiff reported sadness about not having more communication with her family members.  AR 257.  Plaintiff returned to see Bender on May 16, 2006, reporting that she had been turned down twice for social security disability and wondering whether Bender could do anything to help her with that.  Bender refilled plaintiff's MS-Contin prescription and said she would fill out paperwork for plaintiff's disability claim, but she advised plaintiff that part of the reason for the narcotics was to make plaintiff more functional.  AR 251.

In June 2006, plaintiff underwent a complete physical exam by a physician's assistant. Although the exam was unremarkable, plaintiff developed a migraine during the exam.  Her symptoms improved after taking 50 milligrams of Imitrex.  AR 248.

On July 26, 2006, plaintiff saw Dr. Bender and stated that "the medication is better than nothing."  Bender noted that, although plaintiff did not seem happy with her treatment, she was very functional.  She was moving her furniture and gardening.  Bender kept plaintiff on the MS-Contin.  AR 239.

On February 6, 2007, plaintiff saw Dr. Bender and reported that she had experienced severe pain when she stopped taking the MS-Contin for a week because of lack of insurance. Bender increased plaintiff's MS-Contin dosage.  AR 224-25.  On March 6, 2007, plaintiff

reported to Bender that the increased MS-Contin relieved her pain and did not cause any significant side effects.  She was able to do her activities in her home.  AR 222.

On May 31, 2007, plaintiff saw Dr. Bender and reported that she had not filled three prescriptions for pain medication that were on file at the pharmacy.  Plaintiff said she did not realize there were prescriptions at the pharmacy that she could have filled.  Bender continued  plaintiff on the MS-Contin and gave her the prescriptions to take with her.  AR 212-13.  In September 2007, plaintiff discussed with Bender the possibility of tapering off MS-Contin, stating that she felt better after having had a breast reduction in July.  Bender indicated that it might be best to hold off on tapering the medication because plaintiff's home had been flooded and she and her companion were in the process of moving furniture up to the second floor.  AR 198-99.  In October, plaintiff told Bender that she was still working on her house but would like to start tapering the morphine after her work at home was less difficult.  AR 196.  On December 28, 2007, Bender met with plaintiff to explain how she should go about tapering her medication.  AR 184.  Plaintiff was to follow up in four months.

On February 25, 2008, plaintiff saw Dr. Harnish, reporting that for the past two to three months she had been having symptoms of depression related to problems with her son, who was in jail, and with her daughter, who was having problems that plaintiff declined to identify.  Harnish noted that plaintiff appeared well and was alert, pleasant and cooperative.

He concluded that her depressive symptoms were likely situational and weather-related. Harnish prescribed Wellbutrin.  AR 181.

## C.  Consulting Physicians

On January 19, 2006, state agency consulting physician Dr. Pat Chan assessed plaintiff's physical residual functional capacity, noting that plaintiff had a diagnosis of low back pain.  He concluded that plaintiff could lift 10 pounds frequently and 20 pounds occasionally; stand or walk six hours in an eight-hour work day; and sit six hours in an eight-hour work day with no postural limitations.  AR 116-23.  On April 10, 2006, state agency physician Michael Baumblatt reviewed the evidence and affirmed Chan's residual functional capacity assessment.  AR 158.

On April 13, 2006, state agency consulting psychologist Keith Bauer completed a Psychiatric Review Technique Form for plaintiff after reviewing the evidence of record.  He evaluated the evidence under the listing categories for affective disorders.  In addressing the "B" criteria for these listings, he found plaintiff had mild restrictions of activities of daily living, in maintaining social functioning and in maintaining concentration, persistence or pace, and no episodes of decompensation.  Bauer concluded that the evidence did not establish the presence of the "C" criteria.  He did not complete a mental residual functional capacity assessment for plaintiff.  AR 159-72.

D. <u>Hearing Testimony</u>

Plaintiff testified that she had worked as a cashier at a grocery store for two or three weeks in September 2005.  AR 278-79.  She had previously worked as a cashier at various convenience stores.  AR 280.  Plaintiff testified that she quit working because back pain prevented her from standing for any length of time.  AR 281.  She testified that she had been diagnosed with scoliosis and arthritis and had been treated with physical therapy, a TENS unit and medication.  She had taken MS-Contin for three years.  AR 282.  She testified that the pain increased with activity and that the pain medication caused insomnia and weight gain. She said she needed to change position every half hour but could lift 20 pounds occasionally.  AR 284-85.  Plaintiff testified that she had swelling in her lower extremities, chest pain, depression and monthly headaches that could last "a couple of days."  AR 286-87.

The administrative law judge called Paul Malucci, a neutral vocational expert, to testify.  The administrative law judge asked Malucci hypothetically whether an individual of plaintiff's age, education, work experience and the residual functional capacity to perform light work could perform plaintiff's past work.  Malucci testified that such an individual would be able to perform plaintiff's past jobs of convenience store clerk and grocery store cashier.  In addition, he said, the hypothetical individual could perform 5,000 janitorial jobs, 2,000 laundry worker and 20,000 assembly jobs existing in Wisconsin.  In the second

hypothetical, the administrative law judge added the limitation of being able to perform only simple, routine and repetitive work.  Malucci testified that the number of jobs available would be the same.  AR 293-94.

The administrative law judge posed another hypothetical, limiting the individual to simple, routine, repetitive sedentary work with a sit or stand option about every 30 minutes. Malucci testified that this individual could not perform plaintiff's past work but could perform 3,000 assembly jobs, 1,000 inspector jobs and 4,000 packaging jobs.  AR 294.

## E.  The Administrative Law Judge's Decision

In reaching his conclusion that plaintiff was not disabled, the administrative law judge performed the required five-step sequential analysis.  20 C.F.R. § 404.1520.  Under this test, the administrative law judge sequentially considers 1) whether the claimant is currently employed;2) whether the claimant has a severe impairment; 3) whether the claimant's impairment meets or equals one of the impairments listed in 20 C.F.R. § 404, Subpt. P, App. 1;4) whether the claimant can perform his past work;and 5) whether the claimant is capable of performing work in the national economy.  Knight v. Chater, 55 F.3d 309, 313 (7th Cir. 1995).  If a claimant satisfies steps one through three, he is automatically found to be disabled.  If the claimant meets steps one and two, but not three, then he must satisfy step four.  Id.  The claimant bears the burden of proof in steps one through four.  If the claimant

satisfies step four, the burden shifts to the Commissioner to prove that the claimant is capable of performing work in the national economy.  Id.

At step one, the administrative law judge found that plaintiff had not engaged in substantial gainful activity since July 13, 2005.  At step two, he found that plaintiff had the severe impairments of a back disorder and an affective disorder.  AR 22-23.  With respect to plaintiff's  depression, the administrative law judge noted that plaintiff's condition had been described as situational and weather-related and that the state agency consulting psychologist had found the depression to be non-severe.  However, the administrative law judge found the depression to be severe, noting that it had persisted for more than a year. Evaluating the four functional areas relevant to determining the severity of mental impairments, see 20 C.F.R. § 404.1520a, he found that plaintiff had no more than mild limitations of daily living and concentration, persistence or pace and no extended episodes of decompensation.  However, he found that, in view of her reported family difficulties, she had moderate limitations in social functioning.  AR 23.

The administrative law judge found at step three that plaintiff did not have an impairment or combination of impairments that met or medically equaled any impairment listed in 20 C.F.R. 404, Subpart P, Appendix 1.  AR 24.  Next, the administrative law judge determined that plaintiff had the residual functional capacity to perform simple, routine, repetitive work activity; lift up to 20 pounds occasionally and 10 pounds frequently; and sit

or stand for up to six hours each during an eight-hour day.  AR 24.  The administrative law judge found that although plaintiff's impairments could reasonably be expected to produce symptoms, her subjective complaints concerning the severity of her symptoms and limitations were not supported by the evidence.  AR 25.

At step four, the administrative law judge relied on the vocational expert's testimony and found that plaintiff could perform her past relevant work as a grocery and convenience store clerk.  AR 25.  In the alternative, the administrative law judge found at step five that an individual of plaintiff's age, education, work experience and residual functional capacity could perform 5,000 janitorial jobs, 2,000 laundry jobs and 2,500 assembly positions existing in Wisconsin.  (This last finding appears to be a typographical error.  In his answer to the determinative hypothetical, the vocational expert identified 20,000 assembly positions.)  Accordingly, the administrative law judge found that plaintiff was not disabled. AR 25.

## F.  Appeals Council

On June 9, 2008, Dr. Harnish completed a medical source statement concerning plaintiff's limitations and submitted it to the Appeals Council.  He indicated that plaintiff could lift 10 pounds occasionally and less than 10 pounds frequently, could stand or walk less than two hours in an eight-hour work day and needed to alternate between sitting and

12

standing.  He concluded that plaintiff would be unable to work an eight-hour day without experiencing severe pain.  AR 272A.  On October 28, 2008, the Appeals Council issued a decision denying plaintiff's request for review.  The council indicated that it had considered Dr. Harnish's statement, but "found that this information does not provide a basis for changing the Administrative Law Judge's decision."  AR 6.


OPINION

A.  Standard of Review

The standard by which a federal court reviews a final decision by the commissioner is well settled: the commissioner's findings of fact are "conclusive" so long as they are supported by "substantial evidence."  42 U.S.C. § 405(g).  Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971).  When reviewing the commissioner's findings under § 405(g), the court cannot reconsider facts, reweigh the evidence, decide questions of credibility or otherwise substitute its own judgment for that of the administrative law judge regarding what the outcome should be.  Clifford v. Apfel, 227 F.3d 863, 869 (7th Cir. 2000).  Thus, where conflicting evidence allows reasonable minds to reach different conclusions about a claimant's disability, the responsibility for the decision falls on the commissioner.  Edwards v. Sullivan, 985 F.2d 334, 336 (7th Cir. 1993).  Nevertheless,

13

the court must conduct a "critical review of the evidence" before affirming the commissioner's decision, id., and the decision cannot stand if it lacks evidentiary support or "is so poorly articulated as to prevent meaningful review." Steele v. Barnhart, 290 F.3d 936, 940 (7th Cir. 2002).  When the administrative law judge denies benefits, he must build a logical and accurate bridge from the evidence to his conclusion.  Zurawski v. Halter, 245 F.3d 881, 887 (7th Cir. 2001).

B.  Credibility

Plaintiff challenges the administrative law judge's determination that her statements concerning the intensity, persistence and limiting effects of her symptoms were not supported by the evidence.  Under Social Security Ruling 96-7p, an administrative law judge must follow a two-step process in evaluating an individual's own description of his or her impairments:  1) determine whether an "underlying medically determinable physical or mental impairment" could reasonably be expected to produce the individual's pain or other symptoms; and 2) if such a determination is made, evaluate the "intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities."  Social Security Ruling 96-7p, 1996 WL 374186, *1 (1996); see also Scheck v. Barnhart, 357 F.3d 697, 702 (7th Cir. 2004).  When conducting this evaluation, the administrative law judge may not reject the claimant's

14

statements regarding her symptoms on the sole ground that the statements are not substantiated by objective medical evidence.  Instead, the administrative law judge must consider the entire case record to determine whether the individual's statements are credible. Relevant factors the administrative law judge must evaluate are the individual's daily activities; the location, duration, frequency and intensity of the individual's pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; other treatment or measures taken for relief of pain; the individual's prior work record and efforts to work; and any other factors concerning the individual's functional limitations and restrictions.  SSR 96-7p; 20 C.F.R. §§ 404.1529(c), 416.929(c). See also Scheck, 357 F.3d at 703; Zurawski, 245 F.3d at 887.

An administrative law judge's credibility determination is given special deference because the administrative law judge is in the best position to see and hear the witness and to determine credibility.  Shramek v. Apfel, 226 F.3d 809, 812 (7th Cir. 2000).  In general, an administrative law judge's credibility determination will be upheld unless it is "patently wrong."  Prochaska v. Barnhart, 454 F.3d 731, 738 (7th Cir. 2006); Sims v. Barnhart, 442 F.3d 536, 538 (7th Cir. 2006) ("Credibility determinations can rarely be disturbed by a reviewing court, lacking as it does the opportunity to observe the claimant testifying."). However, the administrative law judge still must build an accurate and logical bridge between

15

the evidence and the result.  Shramek, 226 F.3d at 811.  The court will affirm a credibility determination as long as the administrative law judge gives specific reasons that are supported by the record.  Skarbeck, 390 F. 3d at 505.

The administrative law judge found that plaintiff's statements concerning the intensity, duration and limiting effect of her symptoms were not supported by the evidence. In making this determination he considered that

- plaintiff had alleged the onset date of her disability as of the date of her non-severe toe fracture rather than as of the onset of her back pain;

- medical records from the same month in which plaintiff applied for disability showed that she was minimally compliant with prescribed exercises and was doing a lot of traveling;

- in 2006, plaintiff had been active in cleaning, painting her house, moving furniture and gardening;

- Dr. Bender had described plaintiff as seeming very functional in July 2006;

- in 2007, plaintiff had been working on her house after it had been flooded; and

- plaintiff had not bothered to refill her pain medication in 2007.

Although plaintiff argues that the administrative law judge did not make any explicit credibility determination, I disagree.  After discussing the evidence listed above, the administrative law judge stated:

Upon considering the evidence of record, the appeal tribunal finds that the claimant's medically determinable impairments could reasonably be expected

16

> to produce the alleged symptoms.   However, the claimant's statements concerning the intensity, duration and limiting effects of these symptoms are not supported by the evidence.   In addition, in consideration of the factors of Social Security Administration Ruling 96-7p, particularly the reports of her activities and statements of Dr. Bender, the claimant's allegations of total disability are not supported by the evidence.

AR 25.   Contrary to plaintiff's contention, nothing in the commissioner's rulings or regulations required the administrative law judge to make an explicit determination of the credibility of each of the claimant's various statements concerning her symptoms.   He did not have to discuss at length each of the factors listed in SSR 96-7p.   It is plain from the decision that the administrative law judge considered the objective medical evidence and plaintiff's course of treatment, use of medication and daily activities in arriving at his credibility determination.   Plaintiff's contention that the administrative law judge did not articulate his conclusions adequately or adhere to the regulations is without merit.

Also, plaintiff contends that the administrative law judge's credibility determination rests on negative inferences that are not supported by the record.   Plt.'s Br., dkt. #16, at 18. Plaintiff argues, for example, that although the administrative law judge criticized her for applying for disability shortly after she began to seek treatment for her back pain and for failing to refill her prescription, he ignored the fact that she told her doctors that she had had the pain for a long time and that the refill issue had been caused by confusion on plaintiff's part.   Even putting aside these findings, however, I am still satisfied that the administrative

17

law judge's credibility finding was not patently wrong.  Overall, the record showed that in spite of her condition, plaintiff was able to perform rather strenuous activity, including moving furniture, painting and gardening, and after her breast reduction surgery was able to taper off her morphine.  The objective evidence did not document any radiologic or neurological deficits, her back condition was deemed not severe enough to warrant surgery and the consulting physicians for the state agency concluded that plaintiff could perform light work.  All of this evidence provides ample support for the administrative law judge's conclusion that plaintiff's allegation of total disability was not credible.

## C.  Residual Functional Capacity

### 1.  Physical residual functional capacity

A claimant's "residual functional capacity" is the "individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis."  Social Security Ruling 96-8p; see also 20 C.F.R. § 404.1545.  A "regular and continuing basis" means "8 hours a day, for 5 days a week, or an equivalent work schedule."  Id.  At the disability hearing stage, the responsibility for determining the claimant's residual functional capacity lies with the administrative law judge, who must consider all relevant medical and other evidence in the record, including statements from medical sources, the claimant and others.  20 C.F.R. §§ 404.1545, 404.1546.

In concluding that plaintiff could perform light work, the administrative law judge relied on the opinions of the state agency consulting physicians, finding the state agency opinions to be consistent with the record and noting the absence of any contrary opinions from any treating source.  AR 25.  Although plaintiff acknowledges that this was true at the hearing stage, she points out that after the hearing, Dr. Harnish completed a medical source statement endorsing severe limitations that would rule out competitive employment. Plaintiff argues that had the administrative law judge reviewed this opinion, it is likely that it would have changed his conclusion because Dr. Harnish was a treating source.  Plt.'s Br., dkt. #16, at 20-22.

In her reply brief, plaintiff concedes that this court may not reverse an administrative law judge's decision on the basis of evidence never presented to him.  Eads v. Secretary of Dept. of Health and Human Services, 983 F.2d 815, 817 (7th Cir. 1993) ("The correctness of [the ALJ's] decision depends on the evidence that was before him").  She also concedes that she is not seeking a remand under sentence six of § 405(g), which provides a mechanism through which the court may remand the case to the agency for consideration of additional evidence upon a showing that the evidence is new and material and that there was good cause for its omission from the administrative proceeding.  42 U.S.C. § 405(g) (sixth sentence); Eads, 983 F.2d at 817.  For the first time, however, she argues that under Nelson v. Bowen, 855 F.2d 503, 506-08 (7th Cir. 1988), the Appeals Council's finding that Dr.

Harnish's report "does not provide a basis for changing the Administrative Law Judge's decision" is a finding of immateriality that this court may review.  Reply Br., dkt. #20, at 8.

Plaintiff waived this argument by failing to raise it until her reply brief.  United States v. Alhalabi, 443 F.3d 605, 611 (7th Cir. 2006) (arguments not fully developed until reply brief are waived).  Even if I were to consider it, however, I would not find it a reason for remanding this case.  Apart from the fact that the Appeals Council's finding does not appear to fall within the narrow exception carved out in Nelson, 855 F.2d at 505 (Appeals Council found expressly that new evidence was "not material"), I am confident that Dr. Harnish's opinion does not give rise to a "reasonable probability" of a different outcome had the administrative law judge considered it.  Id. at 506 (defining "material").  Apart from plaintiff's diagnoses of scoliosis and degenerative disc disease, Harnish did not cite any clinical findings in support of his opinions, but appears to have accepted at face value plaintiff's allegation of severe, disabling pain.  Further, it was Bender, not Harnish, who regularly treated plaintiff for her pain:  Harnish only prescribed medication for plaintiff's depression, treated her for some mild edema in her legs and managed her other, routine health problems.  AR 253-54 (prescribing medication and compression stockings on April 24, 2006, for plaintiff's transient edema); AR 229 (treating plaintiff in August 2006 for chest pain and trace edema).  Finally, Harnish's opinion was contradicted by the various reports in the record describing plaintiff as being quite functional, engaging in activities such as

20

moving heavy furniture and gardening, and showing that she felt well enough after her breast reduction surgery to taper off her morphine.

Apart from arguing that Dr. Harnish's opinion provides a basis for remand, plaintiff does not raise any other arguments in opposition to the administrative law judge's conclusion regarding her physical residual functional capacity.   Accordingly, I find that the administrative law judge properly concluded that plaintiff was capable of performing light work.

2.  Mental residual functional capacity

Plaintiff challenges the administrative law judge's finding that she had the mental capacity to perform simple, routine and repetitive work.  She points out that in analyzing the severity of her mental impairment at step two of the sequential evaluation process, the administrative law judge found she had moderate limitations in social functioning, and concluded that her depression was a "severe" impairment.  Accordingly, argues plaintiff, he should have included mental work-related limitations in the residual functional capacity assessment.  In particular, plaintiff argues, the residual functional capacity assessment should have included a limitation on her interaction with coworkers, supervisors and the general public.

21

Admittedly, the administrative law judge's finding of severity at step two stands in some tension with his failure to include any limitations related to social functioning in his residual functional capacity assessment.  20 C.F.R. § 404.1521(a) (defining "not severe" impairment as one that "does not significantly limit your physical or mental ability to do basic work activities").  At step two of the sequential evaluation, the administrative law judge explained that he was finding plaintiff to have moderate limitations in social functioning on the sole basis of her reported inability to get along with her family.  In his discussion of plaintiff's residual functional capacity, however, the administrative law judge noted that "although [plaintiff's] depression has been found to be severe, there is no indication of any particular consequent limitations on her activities."  AR 25.  This latter conclusion has ample support in the record.  When asked what would prevent her from returning to her past work as a cashier, plaintiff identified only physical problems.  She made no mention of any difficulties getting along with others.  Other than notations about plaintiff's family conflicts, none of her health providers made any observations to suggest that plaintiff was anxious, socially avoidant or prone to violent outbursts or that she had any other symptoms that would affect her ability to relate to others in the workplace.  In fact, as the administrative law judge noted, the consulting psychologist who reviewed plaintiff's record concluded that her mental impairment was not severe, finding that, at most, it imposed mild limitations in her social functioning.

22

In light of this, it appears that the administrative law judge's error was not in failing to include social limitations in the residual functional capacity assessment, but rather in finding that the mental impairment was severe.  In spite of the inconsistency created by the findings, I am satisfied that plaintiff was not prejudiced by it.  The record fails to document any limitations on plaintiff's ability to respond appropriately to supervision, co-workers and the general public, making the administrative law judge's failure to include such limitations in his residual functional capacity assessment harmless.  Keys v. Barnhart, 347 F.3d 990, 994 (7th Cir. 2003) (harmless error doctrine applies to administrative decisions); Sahara Coal Co. v. Office of Workers Compensation Programs, 946 F.2d 554, 558 (7th Cir. 1991)("If the outcome of a remand is foreordained, [the court] need not order one.").  The administrative law judge properly found that plaintiff retained the mental residual functional capacity to perform simple, repetitive and routine work.

D.  Steps Four and Five

Next, plaintiff argues that the administrative law judge incorrectly determined that she could perform her past work.  "To determine whether a claimant can perform his past relevant work, an administrative law judge must compare the demands of the claimant's past occupation with his or her present capacity."  Steward v. Bowen, 858 F.2d 1295, 1299-1300 (7th Cir. 1988); Social Security Ruling 82-62 (administrative law judge must obtain

23

sufficient information about skill level, exertional demands and nonexertional demands of claimant's past work to permit decision as to whether claimant can return to that work). However, in making this comparison, the adjudicator need not consider only the functional demands and duties of the job as the claimant actually performed it, but may consider the functional demands of the job as generally required by employers in the national economy. Social Security Ruling 82-61; Smith v. Barnhart, 388 F.3d 251, 253 (7th Cir. 2004); Steward, 858 F.2d at 1301.  Contrary to plaintiff's contention, it appears that the vocational expert determined that plaintiff could return to her past relevant work as a cashier or a convenience store clerk as generally performed in the economy, not as she actually performed it.  Accordingly, most of plaintiff's step four arguments are irrelevant.

In any case, the administrative also found that even if plaintiff could not perform her past work, she was able to make a vocational adjustment to thousands of other jobs existing in the regional economy.  Plaintiff contends that this finding is not supported by substantial evidence because the administrative law judge did not include all of her limitations in the relevant hypothetical.  Specifically, plaintiff argues that the administrative law judge failed to include limitations on contact with supervisors, co-workers and the public or to provide any limitations related to her migraine headaches.  Plt.'s Br., dkt. #16, at 27.  I have already rejected plaintiff's first argument related to her social functioning.  With respect to the migraines, plaintiff points to her testimony at the hearing that she would have headaches

24

about once a month that could last up to couple days, and to the June 20, 2006 examination in which she was provided Imitrex for a migraine.  Although the administrative law judge did not mention this evidence in his decision, I am confident that he did not err.  Plaintiff never alleged she was disabled by migraines, and her testimony that she suffered from monthly, multi-day headaches is not corroborated by any medical records or complaints to her doctors.  As noted previously, the administrative law judge properly determined that plaintiff was not credible.  It is reasonable to infer that plaintiff's new allegation of disabling migraines was encompassed within this finding.

In sum, substantial evidence in the record supports the administrative law judge's conclusion that, in spite of her impairments, plaintiff can perform various jobs existing in significant numbers in the regional economy.  Accordingly, under 42 U.S.C. § 405(g), the commissioner's decision must be affirmed.

ORDER

IT IS ORDERED that the decision of defendant Michael J. Astrue, Commissioner of

Social Security is AFFIRMED and plaintiff Angie Sue Clark's  appeal is DISMISSED.  The

clerk of court is directed to enter judgment in favor of defendant and close this case.

Entered this 27th day of October, 2009.

BY THE COURT:

/s/

_____

BARBARA B. CRABB
District Judge

26